THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:07-CR-101-2-FL(3)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | **MEMORANDUM,** |
| ) | **RECOMMENDATION &** |
| vs. ) | **ORDER** |
| ) | |
| OTIS WALDRON a/k/a BRUCE ) | |
| MILLINGTON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This Cause comes before the Court upon the following motions filed by Defendant:

1) Motion to suppress [DE-53];

2) Motion for intent to use 404(b) evidence [DE-47];

3) Motion for early release of Jencks material [DE-48];

4) Motion for inculpatory statements [DE-49];

5) Motion to preserve evidence [DE-50];

6) Motion to reveal promises and inducements [DE-51]; and

7) Motion to strike alias.

The Government has responded to these motions, and the matters are now ripe for adjudication. As an initial matter, it is noted that most of these motions are discovery motions. Accordingly, Defendant is required to comply with Local Criminal Rule 12.2, Eastern District of North Carolina. Local Criminal Rule 12.2 specifically requires a defendant

to preface any discovery motion with a statement that his attorney has had a discovery conference with the Government's attorney and has been refused discovery of a specific item for a particular reason. This rule enables the court to distinguish genuine discovery disputes from exhaustively imprecise efforts by defense counsel to discover every aspect of the Government's evidence and trial strategy and to concentrate its efforts on resolving those genuine disputes. In the instant case, Defendant has not complied with Local Criminal Rule 12.2 and the discovery motions could be denied on that ground alone. Defendant is admonished to adhere to the local rules in the future.

**1. Motion to suppress**

On November 13, 2005, Sampson County Sheriff's Office Sergeant Chris Warren was dispatched to a residential trailer at 1802 Mathis Road in Clinton, North Carolina. Def. Mem., DE-53, pg. 2. Sgt. Warren was dispatched to investigate a call that suspicious persons and/or vehicles were behind the residence. *Id.* He arrived at the trailer at 11:25 p.m. *Id.* When Sgt. Warren approached the rear of residence, he did not see any persons or vehicles. *Id.* However, Sgt. Warren did notice that the back door was unsecured and partially open. *Id.* Therefore, Sgt. Warren knocked on the back door. *Id.* After no one answered, Sgt. Warren yelled "Sheriff's Office" a number of times. *Id.* Again he received no response. *Id.* Accordingly, Sgt. Warren entered the hallway of the trailer to further investigate whether a burglary was in progress. Def. Ex, DE 53-2, pg. 4. Upon entering the residence, contraband, ammunition and drug paraphernalia were in Sgt. Warren's plain view. Govt. Mem., DE-60, pg. 3. There were also small baggies throughout the residence. Def. Ex., DE 53-2, pg. 4. Sgt.

2

Warren radioed for back-up only to hear his own call repeated to him from a police scanner broadcasting from within the residence. *Id*. He then stepped back out of the trailer to await back-up. Govt. Mem., DE-60, pg. 3. Eventually Deputy Chris Goodwin arrived. Deputy Goodwin and Sgt. Warren then entered the trailer together to check for injured occupants or intruders. *Id*. After completing this investigation, they exited the residence and awaited for another officer to arrive with a search warrant.[1] *Id*.

At approximately 2:35 a.m. on November 14, 2005, Narcotic Agent Joe Frischman obtained a warrant to search the residence. Def. Mem., DE-53, pg. 2-3. While the search warrant was being executed, a vehicle pulled into the driveway of the residence. *Id*. at 3. The vehicle was driven by Defendant with co-defendant Anthony Daniel Smith, Jr. in the front passenger seat, and a female passenger seated in the rear of the vehicle. *Id*. The vehicle immediately attempted to drive away from the residence, but was stopped just down the road. *Id*. Another firearm was found in the vehicle, along with approximately $3,792.00 in cash. *Id*. Defendant initially identified himself as "Bruce Millington" and produced supporting identification. Govt. Mem., DE-60, pg. 3.

During the execution of the search warrant, the following items were seized: 1) three firearms; 2) over 700 grams of marijuana; 3) digital scales; 4) plastic baggies; and 5) the police scanner that had aired Sgt. Warren's back-up call. *Id*. Documents located in the home included a power bill for the location addressed to co-defendant Smith and records reflecting

---

[1] These facts were sworn to by the affiant for the search warrant which was presented to the state judicial officer who issued the search warrant in this case.

the recent discharge of Bruce Millington from the North Carolina Department of Corrections.

Defendant now seeks to suppress all evidence seized as result of the execution of November 14, 2005 search warrant alleging that it was issued in violation of the Fourth Amendment to the United States Constitution. First, the undersigned notes that Defendant has failed to establish that he has a privacy interest in the Mathis Road Residence. In the memorandum in support of his motion, Defendant asserts that the various items that he seeks to suppress were "found in Mr. Waldron's bedroom." Def. Mem., DE-53, pg. 3. This passing reference is the only fact presented by Defendant which addresses his relationship to the Mathis Road Residence.

The Fourth Circuit has stated:

> The first issue that a court must address in examining a Fourth Amendment claim is whether the defendant in question had a reasonable expectation in privacy in the area searched or the item seized . . . The defendant bears the burden of proving that he has a reasonable expectation of privacy . . .
> United States v. Rusher, 966 F.2d 868, 873-874 (4th Cir. 1992)(internal footnote and citations omitted).

Defendant has failed to adequately brief this issue, and thus has failed to meet this burden. Accordingly, the motion could be denied on that ground alone.

Moreover, Defendant's motion to suppress also fails on its merits. Because of a heightened privacy interest involved, warrantless entry into an individual's home is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). However, an exception to the warrant requirement is made when certain exigent circumstances exist. United States v. Cephas, 254 F.3d 488, 494 (4th Cir. 2001). One judicially-recognized

4

exigency is when the delay in obtaining a warrant poses a threat to the safety of the officers or the general public. United States v. Wiggins, 192 F. Supp. 2d 493, 501 (E.D.Va. 2002)(*citing* Warden v. Hayden, 387 U.S. 294, 298-299 (1967)). "This 'emergency doctrine' permits entering a home, without a warrant, when the circumstances call for 'immediate entry [] incident to the service and protective functions of the police, as opposed to, or as a complement to, their law enforcement functions." United States v. Porter, 288 F. Supp. 2d 716, 720 (W.D.Va. 2003)(*quoting* United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)). Therefore, "[p]olice have generally been found to be justified in entering a home in response to a reported burglary or home security alarm, even absent a warrant . . ." *Id.* Here, Sgt. Warren was responding to a late night call that suspicious individuals had been observed near the rear entrance of a residence. When he arrived, these individuals had not yet been accounted for. Upon investigation the rear door was partially opened, and no one answered Sgt. Warren's knocking at the door or his other attempts to announce his presence. Under these circumstances, Sgt. Warren was permitted to enter the residence without a warrant to determine whether a burglary was in progress. *Id.* Immediately upon Sgt. Warren's entry into the residence, contraband, ammunition and drug paraphernalia were in plain view. His observation of these materials was sufficient to support the probable cause necessary to later obtain a search warrant.

For these reasons, it is HEREBY RECOMMENDED that Defendant's motion to suppress [DE-53] be DENIED.

**2. Motion for notice of intent to use 404(b) evidence**

5

Defendant requests that the Government disclose the date, nature, and circumstances of all evidence it intends to introduce pursuant to Rule 404(b) of the Federal Rules of Evidence. [DE-47]. In addition, Defendant also requests that the Court "order the government to disclose the names and addresses of the witnesses the government intends to use whom may testify concerning such matters." Def. Mem, DE-47, pg. 3. In a criminal case, Rule 404(b) requires the prosecution, upon request by the accused, to "provide reasonable notice in advance of trial . . . of the general nature of any [ 404(b)] evidence it intends to introduce at trial." Fed. R. Evid. 404(b). The rule does not entitle the defendant to discovery of the 404(b) evidence itself. To the extent that Defendant requests notice of the general nature of any 404(b) evidence the Government intends to introduce at trial, Defendant's request is GRANTED. This notice shall be provided by the Government at least one week prior to trial. Defendant's request is DENIED to the extent that Defendant seeks disclosure of the 404(b) evidence itself.

**3. Motion for early release of Jencks material**

In addition, Defendant also requests early production of Jencks material [DE-48]. However, the Jencks Act provides: "**after a witness called by the United States has testified on direct examination**, the court shall, on motion of the defendant, order the United States to produce any statement of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(a)(emphasis added). Defendant's request for the early production of this material is clearly contrary to the plain language of the Jencks Act. Accordingly, this request is DENIED.

### 4. Motion for inculpatory statements

Defendant also seeks disclosure of all inculpatory statements made by co-defendants or co-conspirators that the Government intends to introduce at trial pursuant to Federal Rule of Evidence 801(d)(2)(E) [DE-49]. He asserts that these statements are discoverable pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The Fourth Circuit has specifically addressed Defendant's argument and held that the plain language of Federal Rule of Criminal Procedure 16(a)(1)(A) pertains only to the discovery of statements "made by the defendant and does not mention nor does it apply to discovery of statements made by co-conspirators." United States v. Roberts, 811 F.2d 257, 258 (4th Cir. 1987); United States v. King, 121 F.R.D. 277, 279-280 (E.D.N.C. 1988). Rather, statements by co-conspirators are governed solely by The Jencks Act. As noted above, the Jencks Act specifically excludes statements of Government witnesses or prospective witnesses from pre-trial discovery. Accordingly, Defendant's motion is DENIED.

### 5. Motion to preserve evidence

Defendant also seeks the entry of an order directing the Government "to preserve, retain intact and not destroy or alter any evidence, tangible paper, handwritten notes, tape recordings, transcript, objects or other information that relates, even remotely, the case" [DE-50]. Defendant makes this request "so that the Trial Court can determine whether disclosure of . . . [the notes of Government agents] . . .is required under Brady v. Maryland, 373 U.S. 83 (1963) or the *Jencks Act* . . ."

In its response to this motion, the Government specifically asserts that it has fully

7

complied with its Brady requirements. Moreover, the investigative notes of Government agents, which are made in the course of witness interviews and later incorporated into the agent's formal report, are not statements within the meaning of the Jencks Act. Accordingly, the Government generally has no obligation to preserve or produce such materials. *See* United States v. Hinton, 719 F.2d 711, 722 (4th Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). For these reasons, Defendants' request is DENIED.

**6. Motion to disclose promises and inducements**

Defendant also requests the disclosure of the existence and substance of any payments, promises, plea agreements, immunity, leniency or preferential treatment made to prospective Government witnesses in this case [DE-51]. As noted by the Government, this motion is entirely superfluous given the existing demands placed upon the Government. The Government already has a duty to disclose all information–including all promises of leniency, immunity, or other similar inducements–which might arguably be used to impeach or discredit a Government witness at trial. United States v. Giglio, 405 U.S. 150, 154-155 (1972); Chavis v. North Carolina, 637 F.2d 213 (4th Cir. 1980). Regardless, this request is GRANTED to the extent that Giglio requires such disclosure and any such evidence has not yet been disclosed to the Defendant.

**7. Motion to strike alias**

Finally, Defendant requests that this Court strike from "Defendant's indictment, superceding indictment, and any further reference thereto at trial, Defendant's alias of 'Mr. Bruce Millington.'" [DE-52]. "If the Government intends to introduce evidence of an alias

8

and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted." United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1976)(internal citation omitted). Here, as noted above, "Bruce Millington" was the very name Defendant gave to officers the night he was arrested. Likewise, the name appears on documentary evidence found inside the trailer. Moreover, the only argument Defendant makes in support of this motion is a bald assertion that the alias "Bruce Millington" is "extremely prejudicial." Defendant fails to elaborate upon how the alias is so inherently prejudicial. Regardless, this request is DENIED.

DONE, ORDERED AND RECOMMENDED in Chambers at Raleigh, North Carolina this 1st day of August, 2008.

_____
William A. Webb
U.S. Magistrate Judge